COURT OF APPEALS OF VIRGINIA

Present: Chief Judge Felton, Judges Frank and Kelsey
Argued at Salem, Virginia

EARL KRUGER KIRBY, III

OPINION BY
v.          Record No. 0829-06-3          JUDGE D. ARTHUR KELSEY
DECEMBER 11, 2007
COMMONWEALTH OF VIRGINIA

FROM THE CIRCUIT COURT OF AUGUSTA COUNTY
Thomas H. Wood, Judge

Steven B. Novey (Novey and Tomko Law Firm, on brief),
for appellant.

Alice T. Armstrong, Assistant Attorney General
(Robert F. McDonnell, Attorney General, on brief), for
appellee.

Earl Kruger Kirby, III, killed his wife and buried her in the backyard of their home.

Convicted by a jury of first-degree murder and use of a firearm during the murder, Kirby argues

on appeal that the trial court committed reversible error by refusing to permit the jury to replay

his videotaped confession during deliberations. The videotape had been played at trial while the

jurors followed along with a verbatim transcript. We affirm Kirby's convictions, finding any

error by the trial court was harmless under the circumstances of this case.

I.

One evening in January 2005, Kirby and his wife engaged in a bitter argument.

Afterwards, Kirby walked into his wife's bedroom and retrieved a loaded pistol from a closet.

While his wife watched television in bed, Kirby fired twice at her. One shot missed her entirely.

The other shot, fired less than two feet from her face, severed her brain stem. Kirby cleaned up

the "mess" (his description), dragged his wife by the feet out of the home, and buried her in a

makeshift grave in the backyard. Kirby called his supervisor at work and told him that his wife

had just died of a heart attack and that he needed to take "a couple of days" off. As friends and family later inquired about his wife, Kirby repeated that she had died of a heart attack. Her body, Kirby added, was going to be sent to California for burial by her son.

At the request of a concerned friend of Kirby's wife, a deputy sheriff stopped by Kirby's house. Upon speaking with Kirby, the deputy became highly suspicious based upon Kirby's remarks. After receiving warnings required by Miranda v. Arizona, 384 U.S. 436 (1966), Kirby twice confessed to killing his wife and told police where they could find her body. Kirby was arrested and later indicted for first-degree murder and use of a firearm during the murder. That evening, investigators videotaped the second confession.

At trial, Kirby did not dispute that he shot his wife and buried her in the backyard. Kirby's counsel told the jury in his opening statement that Kirby was guilty of second-degree murder but not first-degree murder. The evidence, he claimed, would show that Kirby's wife chronically argued with him about "his short-comings as a person and as a husband." In the videotaped confession, counsel said, Kirby explained that he "just lost it" and "couldn't take it anymore." The haranguing was just too much for him. So he shot her in the head. None of this proved, counsel suggested, that Kirby had a specific intent to kill his wife.

Among the Commonwealth's witnesses were the investigators who interviewed Kirby and a forensic medical expert who established that Kirby fired the fatal shot within two feet of his wife's face. One of the investigators testified about an unrecorded interview with Kirby in which he confessed his guilt. When asked why he murdered his wife, Kirby told the investigator that he "just snapped" and "couldn't take it anymore." His wife's "griping," Kirby said, provoked him to kill her.

The Commonwealth introduced the videotaped confession into evidence and played it for the jury. The Commonwealth also prepared a transcript to reflect a verbatim narrative of the

dialogue on the videotape. Without objection, the trial court gave each juror a copy of the transcript while the videotape played on a monitor in front of the jury box. Kirby did not contest the accuracy of the transcript or object to it being provided to the jury. The trial court made the transcript part of the record but did not admit it as evidence. After the videotape was finished playing, the trial court directed the bailiff to retrieve the transcript copies previously handed out to the jurors.

In the videotape, as the transcript records, Kirby repeats what he had said earlier about his reason for killing his wife. In a rambling dialogue, Kirby stated his wife had been telling him every day that he "wasn't a good husband" and he simply "couldn't take it no [sic] more." After taking his dogs downstairs, Kirby said, he "just went in there and grabbed the pistol." As he walked up to her with a loaded pistol, she yelled at him. He then shot her in the face. "I just lost it," he repeatedly explained.

At the close of all the evidence, the trial court gave an agreed jury instruction explaining that first-degree murder involves a willful, deliberate, and premeditated killing. "Willful, deliberate, and premeditated," the court stated, "means a specific intent to kill, adopted at some time before the killing, but which need not exist for any particular length of time." See 2 Virginia Model Jury Instructions, Criminal, No. 33.260, at 33-87 (2006).

During closing argument, Kirby's counsel again contended that the facts did not support a charge of first-degree murder. It was a murder, he admitted, but not one committed with a specific intent to kill. In response, the Commonwealth argued the evidence from Kirby himself demonstrated he intended to kill his wife simply because he could not bear her allegedly unrelenting haranguing. Following closing arguments, the trial court advised the jurors that several pieces of evidence (the pistol, bullets, and the videotape) would remain in the courtroom after they retired for deliberations. "If you . . . need to see it," the court noted, "let us know."

During deliberations, the jury foreman asked the trial court if the jury could "have a *transcript* of the tape, since it's unclear." (Emphasis added.) Without objection, the court told the jury that the transcript was not in evidence and could not be used during deliberations. The court then advised counsel that the jury had also requested the videotape. Kirby's counsel asked that the videotape be provided to the jury during deliberations, given that it had been admitted into evidence as a separate exhibit.

The trial court initially agreed with Kirby's position and noted the prosecutor's objection for the record. A discussion thereafter followed about logistics. Who would operate the videotape player?, the court asked. Kirby's counsel replied that the jurors themselves could operate the videotape recorder. The court then confirmed with Kirby's counsel his agreement that the bailiff would not go into the jury room during deliberations and thus would not operate the tape recorder for them.

After this discussion, the prosecutor raised a concern about whether the videotape could be accidentally erased by a juror inexperienced with operating a videotape recorder. "Judge, our concern is that the tape may be erased," the prosecutor worried, "while they're trying to figure out how to play it." Hearing no satisfactory response, the trial court reconsidered and decided that the jury would not be given the videotape for replay during deliberations. "It creates problems," the court remarked, "that it might get erased, which causes all kinds of problems for us." Kirby's counsel objected to this ruling, contending it violated the defendant's right to a fair trial under the Fourth, Fifth, and Sixth Amendments.

When the jury returned to the courtroom, the trial court provided this response to their request to replay the videotaped confession:

> Members of the jury, you will recall . . . I told you that we could
> not replay or reproduce the testimony made during the course of
> the trial. You will only hear it one time. I want to remind you of
> that instruction at that time, and give you the further ruling that

> you cannot — we can't — for any number of reasons, we are not
> able to . . . play this tape in the jury room at this time.

The jurors returned to their deliberations and found Kirby guilty of first-degree murder and of using a firearm during the murder. See Code §§ 18.2-32, 18.2-53.1.

## II.

On appeal, Kirby argues that the trial court violated Code § 8.01-381 by failing to provide the videotape to the jury during deliberations.[1] That statute provides:

> No pleadings may be carried from the bar by the jury. Exhibits may, by leave of court, be so carried by the jury. Upon request of any party, the court shall instruct the jury that they may request exhibits for use during deliberations. Exhibits requested by the jury shall be sent to the jury room or may otherwise be made available to the jury.

Code § 8.01-381. The Commonwealth argues that, even if Kirby could demonstrate a violation of this statute, we would have no authority to reverse his convictions because the alleged error by the trial court was harmless as a matter of law.[2] We agree.

(a) THE HARMLESS ERROR STANDARD

A criminal defendant "'is entitled to a fair trial but not a perfect one,' for there are no perfect trials." Brown v. United States, 411 U.S. 223, 231-32 (1973) (citations omitted). "No litigant has the right to demand more, and no Commonwealth ought to give less." Walker v.

---

[1] Kirby has abandoned his argument that the trial court violated any constitutional right to a fair trial.

[2] The Commonwealth also argues that Kirby failed to raise the statutory basis of his objection in the trial court and that, in any event, the trial court's decision should be affirmed as a legitimate effort to preserve vulnerable evidence. Given our harmless error holding, we need not address either of these arguments. In this case, as in all others, we seek to decide cases "on the best and narrowest ground available" from the record. Miles v. Commonwealth, 274 Va. 1, 2, 645 S.E.2d 924, 925 (2007) (Kinser, J., concurring) (quoting Luginbyhl v. Commonwealth, 48 Va. App. 58, 64, 628 S.E.2d 74, 77 (2006) (*en banc*)); Deville v. Commonwealth, 47 Va. App. 754, 758, 627 S.E.2d 530, 532 (2006) (citation omitted); Logan v. Commonwealth, 47 Va. App. 168, 171 n.3, 622 S.E.2d 771, 773 n.3 (2005) (*en banc*) (citation omitted).

Commonwealth, 144 Va. 648, 652, 131 S.E. 230, 231 (1926).  Absent an error of constitutional magnitude, "no judgment shall be arrested or reversed" when "it plainly appears from the record and the evidence given at the trial that the parties have had a fair trial on the merits and substantial justice has been reached . . . ."  Code § 8.01-678.  Put another way:

> If, when all is said and done, the conviction is sure that the error did not influence the jury, or had but very slight effect, the verdict and the judgment should stand . . . .  But if one cannot say, with fair assurance, after pondering all that happened without stripping the erroneous action from the whole, that the judgment was not substantially swayed by the error, it is impossible to conclude that substantial rights were not affected . . . .  If so, or if one is left in grave doubt, the conviction cannot stand.

Rose v. Commonwealth, 270 Va. 3, 12, 613 S.E.2d 454, 459 (2005) (indirectly quoting Kotteakos v. United States, 328 U.S. 750, 764-65 (1946)).  It is "the duty of a reviewing court to consider the trial record as a whole and to ignore errors that are harmless" lest they "retreat from their responsibility, becoming instead impregnable citadels of technicality."  United States v. Hasting, 461 U.S. 499, 509 (1983) (citation omitted).

The harmless error concept is no mere prudential, judge-made doctrine of appellate review.  It is a legislative mandate, part of our statutory law since the early 1900s, limiting the *ad judicatory* power of Virginia appellate courts.

> Whatever may be the law elsewhere, or whatever it may have been aforetime in this State, since the adoption of the Code of 1919 there has existed in this State a statute which puts a *limitation on the powers* of this court to reverse the judgment of the trial court — a limitation which we must consider on every application for an appeal and on the hearing of *every case* submitted to our judgment.

Walker, 144 Va. at 652, 131 S.E. at 231 (emphasis added).  The General Assembly "deliberately engrafted" the harmless error doctrine into the statutory law of the Commonwealth.  Irvine v. Carr, 163 Va. 662, 669, 177 S.E. 208, 211 (1934).

The harmless error check on judicial power has never been a begrudged limitation, but rather one "favored" by Virginia courts, Windsor v. Carlton, 136 Va. 652, 655, 118 S.E. 222, 223 (1923), because it grows out of the "imperative demands of common sense," Oliver v. Commonwealth, 151 Va. 533, 541, 145 S.E. 307, 309 (1928), and consequently has been "deeply embedded in our jurisprudence," Gilland v. Commonwealth, 184 Va. 223, 235, 35 S.E.2d 130, 134 (1945). For these reasons, Code § 8.01-678 makes "harmless-error review required in *all* cases." Ferguson v. Commonwealth, 240 Va. ix, ix, 396 S.E.2d 675, 675 (1990) (emphasis in original and text in parenthetical); see also Tynes v. Commonwealth, 49 Va. App. 17, 23 n.3, 635 S.E.2d 688, 690 n.3 (2006).

    (b) THE SPECIFIC HARM: FIRST-DEGREE OR SECOND-DEGREE MURDER

Before determining whether error can be fairly characterized as harmless, we must first measure the scope of the possible impact of the error. In this case, the only issue before the jury was whether Kirby killed his wife with premeditation, thus committing first-degree (as opposed to second-degree) murder. "To premeditate means to adopt a specific intent to kill, and that is what distinguishes first and second degree murder." Remington v. Commonwealth, 262 Va. 333, 352, 551 S.E.2d 620, 632 (2001) (citation omitted); Aldridge v. Commonwealth, 44 Va. App. 618, 655, 606 S.E.2d 539, 557 (2004) (citation omitted). "Premeditation is an intent to kill that needs to exist only for a moment." Coles v. Commonwealth, 270 Va. 585, 590, 621 S.E.2d 109, 112 (2005) (quoting Green v. Commonwealth, 266 Va. 81, 104, 580 S.E.2d 834, 847 (2003)).

The killer's homicidal intent, therefore, "need not exist for any specified length of time prior to the actual killing; the design to kill may be formed only a moment before the fatal act is committed provided the accused had time to think and did intend to kill." Remington, 262 Va. at 352, 551 S.E.2d at 632 (citation omitted). "The ordinary suggestion of the words deliberate and premeditated is of a reflective process," Professor Costello explains, "a weighing of pros and

cons which continues over time.  That ordinary meaning is not part of the law of first degree

murder."  John L. Costello, <u>Virginia Criminal Law & Procedure</u> § 3.4-4, at 50-51 (3d ed. 2002).

Governed by these principles, we hold the failure to replay the videotape a second time

for the jury, even if error, was harmless in the context of determining whether Kirby formed a

specific intent to kill for purposes of first-degree murder.  It is true the videotape records Kirby

explaining that he "just lost it" prior to shooting his wife in the head.  The Commonwealth,

however, never once contested that fact.  To be sure, prior to the videotape being offered into

evidence, the prosecutor had already put on the stand the investigator who first interviewed

Kirby.  In that interview, Kirby made exactly the same point that he "just lost it" and "couldn't

take it anymore."  Kirby's counsel alerted the jurors during opening statement of this point and

reminded them of it again in closing arguments.

The videotape merely repeats in detail the same explanation of events that Kirby had

earlier given in an unrecorded interview.  This evidence, coupled with the other circumstances of

this case, irrefutably proved that Kirby intended to kill his wife.  No other plausible explanation

accounts for the fact that:

- Kirby entered his wife's room and retrieved the loaded firearm from a closet while he and his wife were arguing.

- When she continued the tirade, Kirby fired twice at her.  He fired the fatal shot at point-blank range, within two feet of her face.

- Kirby admitted why he killed her:  He simply did not want to continue taking any more verbal harassment from her.[3]

- After the killing, Kirby cleaned up, dragged her body to the backyard, and buried her in a makeshift grave.

- Kirby lied to friends and family to explain the whereabouts of his wife.

---

[3] <u>See</u> <u>generally</u> <u>Harrison v. Commonwealth</u>, 79 Va. 374, 378-79 (1884) (rejecting claim that decedent's character of being "fussy and quarrelsome would justify any person to kill him who should so feel inclined").

These facts closely track the circumstances most commonly associated with first-degree murder.  See, e.g., Jackson v. Virginia, 443 U.S. 307, 325 (1979) (shooting the victim "at close, and thus predictably fatal, range"); Chandler v. Commonwealth, 249 Va. 270, 280, 455 S.E.2d 219, 225 (1995) (firing a weapon more than once); Aldridge, 44 Va. App. at 655-56, 606 S.E.2d at 557-58 (concealment of the victim's body and calculated efforts to avoid detection); Morris v. Commonwealth, 17 Va. App. 575, 578, 439 S.E.2d 867, 869-70 (1994) ("deliberate use of a deadly weapon").[4]  While any one of these circumstances standing alone might have been sufficient, the combination of all of them constituted irrefutable proof of Kirby's specific intent to kill his wife.

In sum, replaying the videotape during jury deliberations — given the Commonwealth's stipulation of its narrative content, the jury's previous viewing of the videotape in open court, the jury's in-court review of the agreed transcript, and the nearly identical evidence presented from the investigator who conducted the initial, unrecorded interview — would have added little to the deliberative process.  Consequently, we can say "with fair assurance" that the jury verdict "was not substantially swayed" by any putative error in not permitting the jury to replay the videotaped confession during deliberations.  Rose, 270 Va. at 12, 613 S.E.2d at 458-59 (citation omitted).  We can similarly disclaim any "grave doubt" about the influence of this alleged error on the jury's verdict in this case.  Id. (citation omitted).

---

[4] See also Schmitt v. Commonwealth, 262 Va. 127, 143, 547 S.E.2d 186, 197 (2001) (finding premeditation where the defendant shot the victim at close range); Bailey v. Commonwealth, 259 Va. 723, 749, 529 S.E.2d 570, 585 (2000) (finding premeditation where the defendant walked into a bedroom and shot the victim "twice in the head at close range"); Stewart v. Commonwealth, 245 Va. 222, 240-41, 427 S.E.2d 394, 406 (1993) (holding that premeditation properly inferred when the defendant shot the victim in the head at close range); Martinez v. Commonwealth, 42 Va. App. 9, 23, 590 S.E.2d 57, 63 (2003) (finding a specific intent to kill where the defendant "deliberately reached into the back of his waistband, pulled out a loaded gun, aimed it at [the victim's] head, leaned over, and shot him at a very short distance").

III.

Because any error by the trial court was harmless, Code § 8.01-678 requires that we affirm

Kirby's convictions for first-degree murder and use of a firearm during the murder.


Affirmed.