COURT OF APPEALS OF VIRGINIA


Present:   Judges Petty, Alston and Senior Judge Coleman
Argued at Alexandria, Virginia


MICHAEL ANGELO LAMBERTI
                                                MEMORANDUM OPINION[*] BY
v.      Record No. 2008-10-4                    JUDGE WILLIAM G. PETTY
                                                   OCTOBER 11, 2011
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
Brett A. Kassabian, Judge

Paul A. Keats, Assistant Public Defender (Office of the Public
Defender, on brief), for appellant.

Joshua M. Didlake, Assistant Attorney General (Kenneth T.
Cuccinelli, II, Attorney General, on brief), for appellee.


        Michael Angelo Lamberti was charged with the malicious wounding of Richard Avila.  A

jury subsequently convicted Lamberti of the lesser-included offense of unlawful wounding.  On

appeal, Lamberti assigns error to the trial court's decision to refuse to admit the results of a blood

test administered to Avila at the hospital.  Lamberti also assigns error to the trial court's decision

not to allow an expert to testify about the test results.  The expert would have testified that

Avila's blood alcohol content (BAC) of 0.27% indicated that he had consumed twelve alcoholic

beverages.  Lamberti argues that the trial court erred when it ruled that the test results were

hearsay not subject to the business record exception.  The Commonwealth argues in response

that even if the trial court erred, any error was harmless.  For the following reasons, we agree

with the Commonwealth.  Therefore, we affirm Lamberti's conviction.

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

Because the parties are fully conversant with the record in this case and this memorandum opinion carries no precedential value, we recite below only those facts and incidents of the proceedings as are necessary to the parties' understanding of the disposition of this appeal. "On appeal, 'we review the evidence in the light most favorable to the Commonwealth, granting to it all reasonable inferences fairly deducible therefrom.'" Archer v. Commonwealth, 26 Va. App. 1, 11, 492 S.E.2d 826, 831 (1997) (quoting Martin v. Commonwealth, 4 Va. App. 438, 443, 358 S.E.2d 415, 418 (1987)).

In accordance with Code § 8.01-678, we have no authority to reverse a harmless error made by the trial court. Kirby v. Commonwealth, 50 Va. App. 691, 699, 653 S.E.2d 600, 604 (2007) (noting that Code § 8.01-678 sets forth a "legislative mandate . . . limiting the *ad judicatory* power of Virginia appellate courts"). Under that statute, we may not reverse the trial court for non-constitutional error when "'it plainly appears from the record and the evidence given at the trial that the parties have had a fair trial on the merits and substantial justice has been reached . . . .'" Id. at 698, 653 S.E.2d at 603 (quoting Code § 8.01-678). Here, we are presented with a non-constitutional error regarding the law of evidence.[1] Such a non-constitutional error is harmless if it "'did not influence the jury'" or "'had but a very slight effect'" on the jury. Id. (quoting Rose v. Commonwealth, 279 Va. 490, 497, 689 S.E.2d 748, 752 (2005)). Moreover, an erroneous decision regarding the admissibility of evidence is harmless if the evidence in question "is merely cumulative of other, properly admitted evidence." McCary v. Commonwealth, 36 Va. App. 27, 40 n.3, 548 S.E.2d 239, 245 n.3 (2001) (citing Freeman v. Commonwealth, 223 Va.

---

[1] At the trial court below, Lamberti merely argued against classifying the test result as hearsay. He never raised any constitutional objection to the trial court's decision, nor has he alleged any constitutional error on appeal. Therefore, we analyze the issue as non-constitutional harmless error.

301, 316, 288 S.E.2d 461, 469 (1982)); see also Charles E. Friend, The Law of Evidence in Virginia § 1-7(f) (6th ed. 2003).

Assuming without deciding that the trial court erred when it refused to admit the test results and refused to allow the expert to testify about those results, we hold that any such error was harmless. Although Lamberti alleges error from both decisions, we analyze them together, since their only purpose was to demonstrate that Avila had consumed more alcohol than his testimony had otherwise indicated. As we explain below, even if that purpose had been fully realized by the admission of the test results and the expert testimony, it would not have changed the ultimate factual conclusions drawn by the jury.

Lamberti sought to introduce the test results and the expert testimony about those results simply to impeach Avila's testimony about the incident by demonstrating that Avila was intoxicated during the incident. However, the evidence already established that Avila was intoxicated. Avila admitted that he had consumed five to six beers and a shot of liquor between about 6:00 p.m. and the time of the incident at about 10:00 p.m. Lamberti's expert testified to the problems this level of alcohol consumption would have caused, including well-known problems with perception, memory, behavior, and judgment. As any lay juror would have recognized—even without the expert testimony—Avila's consumption of this amount of alcohol during this period likely affected his memory, perception, behavior, and judgment. Although Lamberti proffered that his expert would have testified that a BAC of 0.27% is consistent with the consumption of twelve drinks—not the five or six drinks Avila claimed to have consumed—we are not persuaded that the precise level of Avila's intoxication would have changed the jurors' perception of the effect the alcohol had on Avila to any appreciable degree. Lamberti asserts to us that this marginally better indictment of Avila's credibility could have caused the jury to discount Avila's testimony more than it already had (if indeed it had at all),

- 3 -

but we cannot see how it would have done so. Avila had consumed an excessive amount of alcohol, and the jury considered that fact to determine his credibility. Thus, whether he consumed six drinks or twelve drinks does not make a significant difference.

Moreover, to the extent this difference may have changed the jury's view of Avila's credibility, the jury still would have come to the same factual conclusions regarding what happened that night. In his argument to this Court, Lamberti overlooks the key testimony of two disinterested witnesses, both of whom had not consumed any alcohol that night and both of whom witnessed the incident and confirmed that Avila did not act aggressively toward Lamberti. Kevin McGillicuddy, the manager of the bar where the incident took place, and Steven Zavosky, the bar's bouncer, both provided similar, credible accounts that were largely consistent with Avila's account. McGillicuddy and Zavosky both testified that Lamberti was belligerent that night and that he had gotten into an argument with Darren May, the current boyfriend of Lamberti's former girlfriend. After this argument, McGillicuddy asked Lamberti to leave the bar, and he and Zavosky both escorted Lamberti to Lamberti's car. Zavosky was so concerned by Lamberti's behavior that he double-checked the parking lot to make sure that Lamberti had actually left. Both Zavosky and McGillicuddy testified that not long thereafter, Lamberti returned to the bar and began to pound his hands violently on the front window. From there he yelled profanity-laced threats at May.

McGillicuddy and Zavosky both went outside to get Lamberti to leave, as did Richard Avila. Zavosky testified that Avila tried to help diffuse the situation, only to have Lamberti respond with more profanities. According to McGillicuddy and Zavosky, in a matter of seconds Lamberti quickly pulled out a knife and thrust it into Avila's abdomen, concluding the thrust with a twisting motion. Avila made no threatening movements, and Avila had no weapons in his possession. Avila did not know Lamberti or May. After Lamberti stabbed Avila, he ran off.

According to both McGillicuddy and Zavosky, Lamberti was visibly intoxicated that evening. Whatever effect the admission of the test results would have had on the jury's assessment of Avila's credibility, it had no bearing on the jury's perception of the convincing, disinterested testimony of McGillicuddy and Zavosky. The testimony of McGillicuddy and Zavosky verified Avila's account, including the fact that Avila did not act in a threatening manner toward Lamberti.

Accordingly, we cannot conclude that additional proof of Avila's alcohol consumption would have affected the outcome of the trial. Whether Avila consumed six drinks or twelve drinks is, in this case, a distinction without a difference. In either case, the jury would have most likely come to the same conclusion—Avila's perception, memory, and judgment were to some degree impaired. Moreover, even if the jury had been told that Avila had consumed more alcohol than he admitted to having consumed, the overwhelming evidence from disinterested and sober witnesses pointed to Lamberti, not Avila, as the aggressor. Thus, we conclude that the admission of the test results would not have caused the jury to adopt a different set of facts that would have changed the outcome of the case. Accordingly, any error by the trial court in denying the admission of the test results was harmless. Therefore, we affirm Lamberti's conviction for unlawful wounding.

<u>Affirmed.</u>