COURT OF APPEALS OF VIRGINIA

Present:   Judges Beales, Alston and Senior Judge Haley
Argued at Richmond, Virginia

ULYSSES BLANDING, JR.

v.      Record No. 1810-15-2

COMMONWEALTH OF VIRGINIA

MEMORANDUM OPINION[*] BY
JUDGE JAMES W. HALEY, JR.
OCTOBER 4, 2016

FROM THE CIRCUIT COURT OF THE CITY OF HOPEWELL
James F. D'Alton, Jr., Judge

JeRoyd W. Greene, III (Robinson & Greene, on briefs), for
appellant.

Eugene Murphy, Senior Assistant Attorney General (Mark R.
Herring, Attorney General; Kathleen B. Martin, Senior Assistant
Attorney General, on brief), for appellee.

The trial court found Ulysses Blanding, Jr. (appellant) guilty of first-degree murder.  On

appeal, appellant contends the trial court abused its discretion in ruling that testimony from

appellant's psychiatrist that he had diagnosed appellant with dissociative amnesia was inadmissible

evidence.  We hold that, assuming without deciding the trial court erred, any error was harmless.

Accordingly, we affirm.

BACKGROUND

"On appeal, 'we review the evidence in the light most favorable to the Commonwealth,

granting to it all reasonable inferences fairly deducible therefrom.'"  Archer v. Commonwealth, 26

Va. App. 1, 11, 492 S.E.2d 826, 831 (1997) (quoting Martin v. Commonwealth, 4 Va. App. 438,

443, 358 S.E.2d 415, 418 (1987)).

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

UNPUBLISHED

On June 28, 2014, the victim was stabbed thirty-five times. Some of the wounds were superficial, were located on her forearms and hands, and were indicative of defensive injuries. Thirteen of the wounds were located on the victim's head and neck. The assistant chief medical examiner opined that a stab wound to the victim's chest, that was approximately five inches deep, was the cause of her death. An officer found the victim's body approximately seventy feet from appellant's residence.

Kelly Lipford, the victim's sister, testified that on June 28, 2014 at 3:33 p.m., the victim telephoned her and said she needed to be transported to the hospital "because he had sliced her face open because . . . she would not give him the remote control." Twenty minutes after the telephone call, Lipford learned the victim was dead. Lipford testified the victim lived at appellant's residence.

Appellant fled to his parents' residence after the incident. The police accessed appellant's apartment with a key they found on the victim's key chain. Officer Suyes testified there was "a lot of red substance on the porch" and there was red substance in the hallway. The police found a knife in the kitchen sink. The victim could not be eliminated as a contributor to the DNA mixture profile on the knife. The remote control to the television was "smashed" and broken. The police recovered red stained tennis shoes and red stained clothing belonging to appellant.

Detective Polumbo interviewed appellant at about 10:00 p.m. on the night of the incident. Appellant told Polumbo the victim "was stabbing herself during the incident," and he was trying to stop her. Appellant stated the victim held the knife in her left hand, but he could not explain how she sustained knife injuries on her left arm. Appellant initially stated the victim "must have" put the knife in the sink after the stabbing, but when the detective confronted appellant with evidence indicating the victim had not gone back into the apartment, appellant admitted he

put the knife in the sink. Appellant also claimed the victim initially tried to stab him during the incident and he acted in self-defense.

At trial, appellant, a convicted felon, testified the victim did not reside with him. He also denied he was in a romantic relationship with her. Appellant stated he had recently told the victim not to come to his home, but she arrived at his apartment at about 1:00 p.m. on June 28, 2014. Appellant stated he and the victim argued over the remote control for the television, and the victim threw the device, causing it to break. Appellant testified he called the apartment manager after the argument over the remote control and he left a message asking to have the victim removed from the property.

Appellant stated he thought the victim left the apartment, but the victim soon confronted him, carrying two knives. Appellant testified he ran down the steps and the victim caught up with him. He stated the victim cut his hand, shoulder, and chest. Appellant stated he got the knife from the victim, but he could not remember how he did so.

Appellant testified he did not intend to kill the victim, and he could not remember the victim sustaining any of the wounds described by the assistant chief medical examiner. Appellant stated he did not call the police because he did not want to talk to them or make a "big issue" of the matter. After the incident, appellant walked to his daughter's house, and he later went to his parents' residence. He testified he did not recall whether he saw blood on the landing as he left the apartment.

On cross-examination, the prosecutor asked appellant if he remembered how the victim received the thirty-five stab wounds. Appellant responded, "I must have-I had to do it. We were the only two in the house." He also stated, "She–she was doing something with the knife. I don't–I don't know, because I had my hand on it."

Appellant called Dr. James D. Byrne, a psychiatrist, to testify. Dr. Byrne testified he first met with appellant in 2008. Appellant's counsel asked Dr. Byrne if he had a diagnosis for appellant. The Commonwealth objected to the testimony. Appellant proffered that Dr. Byrne's testimony would address why appellant could not remember certain events and would address appellant's credibility. Appellant further proffered that Dr. Byrne would testify that appellant suffered from dissociative amnesia "which is essentially the inability to remember certain events after a traumatic event . . . . [I]t would relate to all people having been in a traumatic event."

The trial court ruled Dr. Byrne was "being offered as an expert as to memory," and it refused to admit the testimony.

## ANALYSIS

"[A]n appellate court decides cases 'on the best and narrowest ground available.'" Luginbyhl v. Commonwealth, 48 Va. App. 58, 64, 628 S.E.2d 74, 77 (2006) (*en banc*) (quoting Air Courier Conf. v. Am. Postal Workers Union, 498 U.S. 517, 531 (1991) (Stevens, J., concurring)). Assuming, without deciding, the trial court erred in refusing to admit Dr. Byrne's testimony, any error was harmless.[1]

"The harmless error check on judicial power has never been a begrudged limitation, but rather one favored by Virginia courts, because it grows out of the imperative demands of common sense, and consequently has been deeply embedded in our jurisprudence." Kirby v.

---

[1] In his reply brief, appellant asserts that the trial court's refusal to admit the evidence "was an error of law of constitutional magnitude" because he "had a "Sixth Amendment right to call witnesses in his defense." However, appellant did not argue to the trial court, as he does on appeal, that the trial court's ruling violated his Sixth Amendment right to call for evidence in his favor. See Rule 5A:18. "One of the tenets of Virginia's jurisprudence is that trial counsel must timely object with sufficient specificity to an alleged error at trial to preserve that error for appellate review." Perry v. Commonwealth, 58 Va. App. 655, 666, 712 S.E.2d 765, 771 (2011). Accordingly, we analyze the issue within a non-constitutional harmless error framework.

Commonwealth, 50 Va. App. 691, 699, 653 S.E.2d 600, 603-04 (2007) (citations and internal quotation marks omitted).

> A criminal defendant "'is entitled to a fair trial but not a perfect one,' for there are no perfect trials." Brown v. United States, 411 U.S. 223, 231-32 (1973) (citations omitted). "No litigant has the right to demand more, and no Commonwealth ought to give less." Walker v. Commonwealth, 144 Va. 648, 652, 131 S.E. 230, 231 (1926). Absent an error of constitutional magnitude, "no judgment shall be arrested or reversed" when "it plainly appears from the record and the evidence given at the trial that the parties have had a fair trial on the merits and substantial justice has been reached . . . ." Code § 8.01-678.

Id. at 698, 653 S.E.2d at 603.

"An error is harmless . . . if 'other evidence of guilt is "so overwhelming and the error so insignificant by comparison that the error could not have affected the verdict . . . ."'" McLean v. Commonwealth, 32 Va. App. 200, 211, 527 S.E.2d 443, 448-49 (2000) (quoting Ferguson v. Commonwealth, 16 Va. App. 9, 12, 427 S.E.2d 442, 444 (1993)).

The Commonwealth presented ample evidence to meet its burden of proving beyond a reasonable doubt that appellant murdered the victim. The victim suffered thirty-five stab wounds. A stab wound in the victim's chest was five inches deep and caused her death. The victim also had defensive stab wounds on her forearms and hands. Appellant testified the victim stabbed herself, but he could not explain how she acquired some of the defensive wounds. On cross-examination, appellant stated he "must have" stabbed the victim because they were the only two people present.

In addition, the victim's sister testified that shortly before she learned the victim was dead, the victim called her and reported that appellant had cut her face during a dispute about the remote control. Furthermore, appellant gave inconsistent information to the police concerning the incident, he did not call the police after the incident, and he fled to his parents' home after the stabbing. "Flight following the commission of a crime is evidence of guilt . . . ." Ricks v.

Commonwealth, 39 Va. App. 330, 335, 573 S.E.2d 266, 268 (2002) (quoting Clagett v. Commonwealth, 252 Va. 79, 93, 472 S.E.2d 263, 271 (1996)).

The question before the trial court was not whether appellant remembered the incident, but, rather, did appellant kill the victim. The trial court heard appellant's testimony that he did not recall certain details of his encounter with the victim. However, the fact that appellant may have had a memory lapse about the incident did not tend to prove appellant did not commit the offense. Therefore, testimony from Dr. Byrne explaining appellant's claimed memory loss was of minimal evidential value. Thus, even if the trial court erred in refusing to admit the evidence, that error was non-constitutional and was harmless based upon the massive evidence of guilt otherwise adduced.

Upon review of the entire record, considering the extensive amount of direct and circumstantial evidence linking appellant to the murder, it plainly appears "that the parties have had a fair trial on the merits and substantial justice has been reached." Lavinder v. Commonwealth, 12 Va. App. 1003, 1005, 407 S.E.2d 910, 911 (1991) (*en banc*). Accordingly, any error by the trial court was harmless.

For the foregoing reasons, we affirm the judgment of the trial court.

Affirmed.