# COURT OF APPEALS OF VIRGINIA

Present:   Judges Huff, Russell and Athey
Argued at Fredericksburg, Virginia

UNPUBLISHED

CULPEPER COUNTY DEPARTMENT OF
 SOCIAL SERVICES

v.      Record No. 0867-19-4

VANESSA CAISON

CULPEPER COUNTY DEPARTMENT OF
 SOCIAL SERVICES

v.      Record No. 0900-19-4

VANESSA CAISON                                    MEMORANDUM OPINION* BY
                                                  JUDGE GLEN A. HUFF
CULPEPER COUNTY DEPARTMENT OF                          JANUARY 28, 2020
 SOCIAL SERVICES

v.      Record No. 0901-19-4

VANESSA CAISON

CULPEPER COUNTY DEPARTMENT OF
 SOCIAL SERVICES

v.      Record No. 0902-19-4

VANESSA CAISON

FROM THE CIRCUIT COURT OF CULPEPER COUNTY
Susan L. Whitlock, Judge

Bobbi Jo Alexis, County Attorney; Christian A. Brashear, Guardian
*ad litem* for the infant children (Office of the County Attorney, on
briefs), for appellant.

James S. Reid for appellee.

---

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

The Culpeper County Department of Social Services ("DSS" or the "Department") brought petitions for permanency planning and for termination of Vanessa Caison's ("mother") parental rights related to two of her children, J.C. and D.C. The Juvenile and Domestic Relations District Court of Culpeper County ("JDR court") granted the petitions, terminated mother's parental rights, and approved foster care plans for both children with the final goal of adoption. Mother appealed to the Circuit Court of Culpeper County, which held that it lacked subject matter jurisdiction and dismissed each of the four petitions.

The circuit court possessed both active and potential jurisdiction over these matters. Therefore, this Court reverses the circuit court's rulings and remands the matters for further proceedings.

## I. BACKGROUND

The Department received a report of concern for the well-being of D.C. and J.C. and opened a family assessment on February 12, 2017. On March 3, 2017, the family was referred to prevention services. On March 6, 2017, the Department received a report of alleged child abuse/neglect claiming that mother was under the influence of PCP and unable to care for her children. The next day, DSS filed emergency removal petitions in the JDR court. Both petitions were granted the same day, and custody of D.C. and J.C. was transferred to DSS. The Department filed initial foster care service plans and petitions for permanency planning with the goal of returning both children to their home.

In June of 2018, the Department revised its assessment and determined that the best interests of both children required termination of mother's parental rights and a foster care plan of adoption. DSS submitted corresponding foster care plans, petitions for permanency planning,

and petitions for the termination of parental rights[1] to the JDR court for both children.  In J.C.'s

cases, the petition for permanency planning, foster care plan, and foster care plan transmittal

form were each stamped "received" on July 2, 2018, and the clerk's office prepared

corresponding summonses the next day.  A petition for termination of parental rights was

subsequently filed on July 24, 2018.  In D.C.'s cases, the foster care plan and foster care plan

transmittal form were each stamped "received" on July 2, 2018.  The petition for permanency

planning, however, was not stamped.  Nonetheless, corresponding summonses for the

permanency planning hearing were prepared by the clerk's office on July 2, 2018.  As in J.C.'s

case, the petition for termination of parental rights in D.C.'s case was filed on July 24, 2018.

The four petitions came before the JDR court and were granted on December 18, 2018.  Mother

appealed to the circuit court.

On March 12, 2019, at the outset of the *de novo* hearing on appeal, the circuit court,

acting *sua sponte*, raised concerns over its jurisdiction.  Mother then moved to dismiss all four

petitions for lack of jurisdiction.  Mother contended that none of the relevant documents were

"filed" because the clerk's office had only stamped the documents "received" and not "filed."

Mother also noted that the petition for permanency planning associated with J.C. had no stamp

— "received" or otherwise — from the clerk's office.  These deficiencies, mother argued,

deprived the circuit court of jurisdiction over the cases.

In response, DSS called Bethany McClanahan, Clerk of the JDR court for Culpeper

County, as a witness.  McClanahan testified that the clerk's office considers documents to be

filed when they are received.  She also identified the "received" stamps on the documents as

being the stamp issued to her by the Supreme Court of Virginia.  Regarding the unstamped

---

[1] The Department also sought and obtained termination of the parental rights of the children's fathers.  However, these orders are not at issue in this appeal.

petition for permanency planning, McClanahan had no direct knowledge of its filing date. However, she testified that her office does not accept any petition for permanency planning unless it is accompanied by the other necessary documents, to include foster care plans and a foster care plan transmittal form. Therefore, she claimed that a "received stamp" and date on any of those documents indicated that accompanying documents were also filed that day.

Ruling from the bench, the circuit court determined that it lacked jurisdiction over the cases. It held that a document being "received" is not the same as "filed" under Rule 1:4(h). Because none of the petitions in either case were stamped "filed" by the JDR court, the circuit court determined that none of the petitions were properly "filed" for purposes of Rule 1:4(h). Therefore, the circuit court ruled that it had no jurisdiction and ordered the appeals dismissed.

On May 10, 2019, the circuit court issued a written order memorializing its holding from the bench and dismissing the cases "for lack of subject matter jurisdiction." It also noted, for the first time, that the lack of a date-stamp on the petition for permanency planning in D.C.'s case left the court unable to determine whether it was received prior to the corresponding petition for termination of parental rights—implying that a petition for permanency planning is a statutory prerequisite to a petition for termination of parental rights. This appeal followed.

## II. STANDARD OF REVIEW

Jurisdictional challenges present questions of law that this Court reviews *de novo*. Gray v. Binder, 294 Va. 268, 275 (2017) (citing Glasser & Glasser, PLC v. Jack Bays, Inc., 285 Va. 358, 369 (2013)). A circuit court's interpretations of statutes and the Rules of the Supreme Court of Virginia are also reviewed *de novo*. Muse Const. Grp., Inc. v. Commonwealth Bd. for Contractors, 61 Va. App. 125, 130 (2012). In construing such language, this Court "must give effect to the [drafters'] intention[s] as expressed by the language used unless a literal interpretation of the language would result in a manifest absurdity." Id. at 130-31 (quoting

- 4 -

Conyers v. Martial Arts World of Richmond, Inc., 273 Va. 96, 104 (2007)) (alterations in original).

## III.  ANALYSIS

The circuit court's determination that it lacked subject matter jurisdiction had two bases. First, it interpreted Rule 1:4(h) to be jurisdictional and determined that the petitions were not properly filed in accordance with that rule.  Second, it noted that it was "unable to determine whether the petition for permanency planning was filed prior to the petition for termination" in D.C.'s case.  Implicitly then, the circuit court interpreted the relevant code provisions to require a petition for permanency planning to be filed prior to a petition for termination of parental rights.

The circuit court erred in holding that it lacked subject matter jurisdiction.  Neither of the bases of its opinion could negate subject matter, or potential, jurisdiction.  At best, they could only affect whether a court possesses *active* jurisdiction.  Furthermore, this Court concludes that Rule 1:4(h) is non-jurisdictional and that the petition for permanency planning in D.C.'s case was filed prior to the petition for termination of parental rights.  Therefore, the circuit court also erred to the extent that it determined that it lacked active jurisdiction.

## A.  Jurisdiction[2]

A court must possess both "potential" and "active" jurisdiction to adjudicate the merits of a case.  Whitt v. Commonwealth, 61 Va. App. 637, 649 (2013) (citing Ghameshlouy v. Commonwealth, 279 Va. 379, 388-89 (2010)).  Although the two are often lumped together under the umbrella of "subject matter jurisdiction," that is incorrect.  See Smith v. Commonwealth, 281 Va. 464, 467 (2011).  They are separate and distinct legal concepts.  Id.

---

[2] At oral argument, mother conceded that the circuit court erred in ruling it lacked subject matter jurisdiction and argued that the defects negated only the active jurisdiction of the circuit court.  However, this Court is not bound by a litigant's concession of law and must independently ensure the correct legal principles are applied.  Logan v. Commonwealth, 47 Va. App. 168, 171 (2005) (*en banc*).

"'[P]otential jurisdiction' is 'the power granted by the sovereignty creating the court to hear and determine controversies of a given character,' or, in other words, 'jurisdiction over the subject-matter.'" Whitt, 61 Va. App. at 649 (quoting Farrant Inv. Corp. v. Francis, 138 Va. 417, 427 (1924)).

Active jurisdiction refers to the court's authority to adjudicate the merits of any specific case. Id. at 650. There are "four essential requisites" to confer active jurisdiction upon a court:

> (1) potential jurisdiction, (2) territorial jurisdiction, (3) actual jurisdiction of the subject matter where the proceeding is in rem, and also of the proper parties where the proceeding is personal, and (4) the other conditions of fact must exist which are demanded by the unwritten or statute law as the prerequisites of the authority of the court to proceed to judgment or decree.

Farrant Inv. Corp., 138 Va. at 427-28. However, because active jurisdiction is required only to render judgment on the merits of a case, a court which lacks active jurisdiction nevertheless has authority to adjudicate ancillary matters such as defects in pleadings. Whitt, 61 Va. App. at 650-51.

JDR courts are creations of the General Assembly. Va. Const. art. VI, § 8; Code § 16.1-69.7. As such, "[t]hey are courts of limited jurisdiction and may exercise only such subject matter jurisdiction as has been expressly conferred by statute." See Parrish v. Federal National Mortgage Association, 292 Va. 44, 49 (2016) (citing Addison v. Salyer, 185 Va. 644, 648 (1946)). "It is well-settled that when exercising its appellate jurisdiction in a de novo appeal, the circuit court's subject matter jurisdiction is derivative of the court not of record from which that appeal is taken." Id. (citing Addison, 185 Va. at 651-52). "Therefore, when exercising its de novo appellate jurisdiction, the circuit court has no more subject matter jurisdiction than the . . . district court had in that court's original proceeding." Id. Accordingly, the scope of the JDR court's subject matter jurisdiction is dispositive of the circuit court's subject matter jurisdiction.

There is no question that the circuit court possessed potential jurisdiction over the petitions. Code §§ 16.1-241(A)(1), 16.1-281, and 16.1-282.1 confer subject matter jurisdiction on JDR courts to hear petitions for permanency planning. Similarly, Code §§ 16.1-241(A)(5) and 16.1-283 confer subject matter jurisdiction on JDR courts to hear petitions for the termination of parental rights. These provisions gave the circuit court derivative jurisdiction in this *de novo* appeal.[3] See Parrish, 292 Va. at 49. Accordingly, the circuit court erred when it determined that it lacked subject matter (or potential) jurisdiction.

### B. Rule 1:4(h)

The circuit court determined that it lacked jurisdiction due to two purported filing errors. First, it ruled that the petitions were not filed because "'received' does not equate with 'filed' as 'received' is when the clerk takes custody of the document and 'filed' is when it becomes part of the record." The circuit court further held that the petitions failed to meet the requirements of Rule 1:4(h), thereby implicitly determining that Rule 1:4(h) is jurisdictional. The circuit court erred on both accounts.

The record is clear that each of the four petitions in these matters was filed.[4] "When not filed electronically, a pleading is filed when it is physically delivered to the clerk of court." Alexandria Redevelopment and Housing Authority v. Walker, 290 Va. 150, 156 (2015) (citations omitted). Each of the four petitions appears in the record transmitted to the circuit court by the JDR court. Necessarily then, each of the petitions was delivered to the clerk of the JDR court

---

[3] Code § 16.1-241(A)(5) grants concurrent jurisdiction to the circuit courts in petitions for termination of parental rights. However, "[a] court's appellate jurisdiction is distinct from its original jurisdiction." Parrish, 292 Va. at 49 n.1. Its grant of original jurisdiction is not invoked in an appeal and, therefore, has no bearing on this Court's analysis. See id.

[4] Mother also conceded at the oral argument that "received" equates to "filed" in this circumstance. While this Court appreciates her candor, this too is a concession of law. Therefore, this Court must independently examine the law. See Logan, 47 Va. App. at 171.

and each of them was therefore "filed." That the clerk's office stamped documents "received" as opposed to "filed" is of no import in determining whether the documents were filed. See id. at 156-58 (rejecting appellee's argument that a "document is filed only when the clerk of court stamps it as filed").

The circuit court further determined that the petitions were not properly filed because they did not meet the requirements of Rule 1:4(h). This rule provides that "[t]he clerk shall note and attest the filing date on every pleading." Rule 1:4(h). The circuit court determined that the clerk's stamp that the pleadings were "received" was necessarily different from an attestation that they were "filed." Therefore, the circuit court reasoned, Rule 1:4(h) was not satisfied and it could not assume jurisdiction over the petitions.

Setting aside the fact that a document is "filed" when the clerk "receives" it, compliance with Rule 1:4(h) is not jurisdictional. It has long been the law that a litigant who complied with the requirements prescribed by the rules of court "should not be denied a review simply because of an error made by a ministerial officer of the court." Leigh v. Commonwealth, 192 Va. 583, 587 (1951). Thus, whether the clerk's office's attestation satisfies Rule 1:4(h) has no bearing on whether the court can assume active jurisdiction over the matter. The controlling factor is whether the document was timely filed. See, e.g., Alexandria Redevelopment, 290 Va. at 156-58; Leigh, 192 Va. at 585-87.

C. Petition for Permanency Planning

The circuit court ruled that it lacked jurisdiction over D.C.'s cases because it was "unable to determine whether the petition for permanency planning was filed prior to the petition for termination in D.C.'s case." Implicitly, this means the circuit court also held that the filing of a petition for permanency planning is a condition precedent to filing a petition for termination of

parental rights under Code § 16.1-283(A).[5]  However, this Court need not reach that subsidiary question because, in either event, the petition for permanency planning in D.C.'s case was filed prior to the petition for termination of parental rights.

The clerk of the JDR court testified that her office accepts a petition for permanency planning, foster care plan, or foster care plan transmittal form only if all three are submitted simultaneously.  Although the petition for permanency planning related to D.C. was not stamped "received," each section of the foster care plan and the transmittal form were stamped on July 2, 2018.  Furthermore, on the same day, the clerk's office prepared three summonses for the hearing on the petition for permanency planning.  Each summons stated that the petition for permanency planning was attached.  Therefore, it is apparent from the record that the petition for permanency planning was also filed on July 2, 2018; well before the July 24, 2018 filing of the petition for termination of parental rights.

"In this case, as in all others, we seek to decide cases, 'on the best and narrowest ground available' from the record."  Foltz v. Commonwealth, 58 Va. App. 107, 114 (2011) (quoting Kirby v. Commonwealth, 50 Va. App. 691, 698 n.2 (2007)).  Because the petition for permanency planning in D.C.'s case was filed prior to the petition for termination of parental rights, this Court need not reach the proper interpretation of Code § 16.1-283(A).  Even if that statute does require a petition for permanency planning to be filed as a prerequisite to a petition for termination of parental rights, that was done here.  Accordingly, the circuit court erred in determining that it lacked active jurisdiction on these grounds.

---

[5] Code § 16.1-283(A) provides that "[n]o petition seeking termination of residual parental rights shall be accepted by the court prior to the filing of a foster care plan, pursuant to § 16.1-281, which documents termination of residual parental rights as being in the best interests of the child."

## IV. CONCLUSION

The circuit court possessed both active and potential jurisdiction in the proceedings below. The subject matter of the petitions was within the circuit court's jurisdictional grant. Rule 1:4(h) is not jurisdictional, and each of the four petitions was "filed" upon the date it was physically received by the clerk's office. Lastly, even if a petition for permanency planning must be filed before a petition for termination of parental rights, that was done here. Therefore, the circuit's ruling that it lacked potential and active jurisdiction was error. These matters are remanded for further proceedings not inconsistent with this opinion.

<u>Reversed and remanded.</u>