# COURT OF APPEALS OF VIRGINIA

### Record No. 1181-24-1

COLA WINBORNE BEALE, IV
v.
COMMONWEALTH OF VIRGINIA

Present: Judges Athey, Friedman and Callins

Opinion Issued June 2, 2026[*]

### FROM THE CIRCUIT COURT OF THE CITY OF VIRGINIA BEACH
James Clayton Lewis, Judge

(Trevor Jared Robinson, on brief), for appellant.

(Jason S. Miyares,[1] Attorney General; Mason D. Williams, Assistant Attorney General, on brief), for appellee.

### MEMORANDUM OPINION
### PER CURIAM

Following a jury trial, the Circuit Court of the City of Virginia Beach ("trial court")

convicted Cola Winborne Beale, IV ("Beale") of two counts of aggravated murder, arson of a

dwelling house, arson of personal property, two counts of use of a firearm in the commission of a

felony, abduction, and felony animal cruelty. The trial court imposed 3 consecutive life sentences,

plus a term of 35 years. On appeal, Beale assigns error to the trial court's denial of his motion to

---

[*] This opinion is not designated for publication. *See* Code § 17.1-413(A).

[1] Jay C. Jones succeeded Jason S. Miyares as Attorney General on January 17, 2026.

strike the two aggravated murder charges, contending that the evidence failed to prove that the killings were "willful, deliberate[,] and premeditated." Finding no error, we affirm.[2]

## I. BACKGROUND[3]

On March 22, 2022, Beale shot and killed his girlfriend, Czavi'er Hill ("Hill"), in her home. Less than three days later, Beale went to the home of Clifton Baxter ("Baxter") where he shot and killed him as well. Hill's burned body—with a ligature consisting of cloth and tape around her neck and a gag wrapped around her head securing "wadded fabric in her mouth"—and the burned corpse of her pet dog, Prince Mills ("Prince"), were discovered on March 24, 2022, after firefighters from the Virginia Beach Fire Department responded to a fire at Hill's residence. That same day, firefighters also responded to a nearby vehicle fire where they encountered Hill's vehicle in flames. On March 25, 2022, law enforcement responded to Baxter's home to perform a welfare check whereupon they discovered Baxter deceased, "laying on the couch in a sleeping position."

Law enforcement subsequently arrested Beale on March 31, 2022, in Hampton. While being arrested, Beale stated, "I was definitely about to fuck some shit up. I was about to lay some more people down." Beale's case then proceeded to a jury trial, which commenced on March 18, 2024.

---

[2] Having examined the briefs and record in this case, the panel unanimously agrees that oral argument is unnecessary because "the appeal is wholly without merit." *See* Code § 17.1-403(ii)(a); Rule 5A:27(a).

[3] Beale challenges the sufficiency of the evidence to sustain his convictions for aggravated murder, so the relevant facts in the record are recited "in the 'light most favorable' to the Commonwealth, the prevailing party in the trial court." *Hammer v. Commonwealth*, 74 Va. App. 225, 231 (2022) (quoting *Commonwealth v. Cady*, 300 Va. 325, 329 (2021)). "Viewing the record through this evidentiary prism requires us to 'discard the evidence of the accused in conflict with that of the Commonwealth, and regard as true all the credible evidence favorable to the Commonwealth and all fair inferences to be drawn therefrom.'" *Cady*, 300 Va. at 329 (quoting *Commonwealth v. Perkins*, 295 Va. 323, 323-24 (2018)).

At trial, the Commonwealth introduced video footage of Beale's custodial interview with Detective Chris Jachimiak ("Detective Jachimiak") of the Virginia Beach Police Department.[4] During the custodial interview, Beale confessed to killing Hill and Baxter by shooting them both in the head with Hill's gun.

Beale explained to Detective Jachimiak that he had tied Hill up with tape, intending to "let her go," because he wanted her to "shut the fuck up." Beale admitted to then pouring bleach on Hill's dog, Prince, before attempting to set the dog on fire. Beale further recounted Hill pleading for the dog's life, stating, "He has nothing to do with this. Take me, let him live." Beale admitted that he then shot Hill because, to him, she was "making too much noise." Beale also confessed to setting Hill's car on fire and explained that since nobody came and checked on Hill after her death, he ignited the home using gasoline.[5] When asked why he killed Hill, Beale explained that there was "a lot of buildup" that "triggered [him]." Beale expressed frustration with Hill's parents "orchestrat[ing] [their] relationship," the downstream effects of an allegedly wrongful prior conviction after pleading guilty to a sex offense, and probation officers visiting his house. Beale exclaimed that being treated as though he committed the sex offense made him want to "get all the guns . . . and . . . kill everything" because he did not feel like people were trying to "hear [him]." He further explained, "If imma live with some shit, I might as well live with some shit that I know I did . . . and however it go, least I know can say I did that shit and not that bullshit I had to wear."

Beale further confessed that, within two days after killing Hill, he went to Baxter's home and, upon discovering Baxter lying on a couch, he approached him and shot him in the head. Beale explained that he stayed with Baxter after being released from incarceration but that he also had to

---

[4] Detective Jachimiak confirmed that he advised Beale of his rights under *Miranda v. Arizona*, 384 U.S. 436 (1966), "off of a preprinted card" at the beginning of the interview and that Beale indicated that he understood them.

[5] Beale described watching Prince burn alive, remarking that he found the scene "funny."

frequently check on his mother, who was "carjacked and robbed" shortly after he came home, which caused him to lose employment. He further stated that Baxter acted like he wanted to help him, but Baxter would only "pinch," which Beale described as Baxter giving him $100. Beale further expressed his view that Baxter would lie to him when he said he did not have enough money to help Beale, so Beale decided to "take it all." In addition, Beale admitted that he searched the home for firearms and removed several guns and over $15,000 in cash from the home after killing Baxter.

When asked during the interview how he currently felt about his actions, Beale answered, "That shit turned me cold," and he further stated that had he been allowed to "keep going," he probably would have killed more people out of anger.

The Commonwealth also introduced doorbell-camera footage of Hill and Beale entering Hill's residence shortly before 1:00 p.m. on March 22, 2022. The camera's microphone recorded a muffled gunshot soon thereafter. Though Beale was subsequently captured on video, including the next day when he returned with two cousins and began removing belongings from the home, Hill never re-emerged. On the day of the fire, the camera captured Beale approaching the home with a black bag. During the course of the ensuing investigation, a black bag containing a gas canister was found inside Hill's home.

Fire investigators from the Virginia Beach Fire Department testified that the house fire and vehicle fire were not accidental. Hill and Baxter's autopsy reports were entered in evidence and testimony from the Chief Medical Examiner's Office indicated that both victims died from a single gunshot wound to the head. Expert testimony also established that there was gunpowder stippling around Baxter's gunshot wound, indicating that the fatal shot was fired from close range—"a few inches to a foot." In addition, certificates of analysis entered in evidence and testimony from a

forensic scientist with the Virginia Department of Forensic Science showed that the bullets recovered from Hill and Baxter were both fired from Hill's gun.

At the close of the Commonwealth's case-in-chief, Beale moved to strike, arguing that Beale became so "impassioned" during his custodial interview when discussing "the justification of his actions" that the Commonwealth failed to make a prima facie case of premeditation. Beale highlighted his "employment problems," the sex offense to which he pleaded guilty but claimed innocence, frustration with probation, and "relationship issues." The trial court denied the motion to strike. Beale presented no additional evidence in his defense and renewed his motion to strike, which was denied. Following jury instructions and closing arguments, the trial court submitted the matter to the jury, which—as relevant here—found Beale guilty on each count of aggravated murder.[6] For these two convictions, the trial court subsequently ordered Beale to serve two consecutive life sentences. Beale appealed.

## II. ANALYSIS

### A. *Standard of Review*

"When the sufficiency of the evidence is challenged on appeal, this Court 'must affirm the conviction unless it is plainly wrong or without evidence to support it.'" *Brown v. Commonwealth*, 68 Va. App. 746, 786-87 (2018) (quoting *Gerald v. Commonwealth*, 68 Va. App. 167, 172 (2017)). "[I]t is not for this [C]ourt to say that the evidence does or does not establish [the defendant's] guilt beyond a reasonable doubt because as an original proposition it might have reached a different conclusion." *Commonwealth v. Barney*, 302 Va. 84, 97 (2023) (second and third alterations in original) (quoting *Cobb v. Commonwealth*, 152 Va. 941, 953 (1929)). "The only 'relevant question is, after reviewing the evidence in the light most favorable to the prosecution, whether any rational

---

[6] Because Beale leaves his six other convictions unchallenged, we do not address them.

trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Id.*

(quoting *Sullivan v. Commonwealth*, 280 Va. 672, 676 (2010)).

    B. *The evidence was sufficient to prove that Beale acted with premeditation.*

Beale contends that the trial court erred in denying his motion to strike the charges of

aggravated murder because the Commonwealth failed to prove the element of premeditation.

Specifically, he argues that the killings were not "willful, deliberate[,] and premeditated," because

"the compulsion to kill," which resulted from "an escalation of misfortunes," was "sudden and

impassioned."[7]  As a result, Beale concludes that, "at best," he could only be convicted of second-

degree murder.  We disagree.

"The willful, deliberate, and premeditated killing of more than one person within a three-

year period" is aggravated murder.  Code § 18.2-31(A)(8).  "To premeditate means to adopt a

specific intent to kill, and that is what distinguishes first and second degree murder."  *Kirby v.*

*Commonwealth*, 50 Va. App. 691, 700 (2007) (quoting *Remington v. Commonwealth*, 262 Va. 333,

---

[7] Beale also employs the phrase "heat of passion" on brief, but it is evident that he is not challenging the sufficiency of the evidence to prove malice.  In the trial court, Beale contended that the Commonwealth failed to "ma[k]e a prima facie case for first-degree murder as opposed to second," which Beale described as "heat of passion, hot blood, those kinds of things."  He further "ask[ed] the court to consider going forward on the lesser charge, at worst, of second-degree [murder]."  But heat of passion is not what distinguishes first-degree murder from second-degree murder—premeditation is.  *Rhodes v. Commonwealth*, 238 Va. 480, 485 (1989).  Heat of passion negates malice.  *See Dandridge v. Commonwealth*, 72 Va. App. 669, 681 (2021).  And "[m]alice, an essential element of all grades of murder, distinguishes murder from manslaughter."  *Rhodes*, 238 Va. at 485.

    By implicitly conceding that the trial court could find the evidence sufficient to prove second-degree murder, Beale necessarily acknowledged that there was sufficient evidence of malice.  Moreover, Beale's assignment of error also concedes that the evidence was "at best" "sufficient to establish a prima facie case for second degree murder."  Finally, Beale has never argued, at trial or on appeal, that he could only be convicted of manslaughter; in fact, while discussing jury instructions, Beale's counsel remarked that the instructions "contain[ed] language for gradation of offense, first degree to second degree," and acknowledged that he "didn't have a scintilla of evidence to suggest anything lesser than that or at least a lesser charge."  Thus, we only address the element of premeditation.

352 (2001)).[8] "Premeditated murder . . . contemplates: (1) a killing; (2) a reasoning process antecedent to the act of killing, resulting in the formation of a specific intent to kill; and (3) the performance of that act with malicious intent." *Fields v. Commonwealth*, 73 Va. App. 652, 674 (2021) (alteration in original) (quoting *Rhodes v. Commonwealth*, 238 Va. 480, 486 (1989)). The specific intent to kill "need not exist for any specified length of time prior to the actual killing; the design to kill may be formed only a moment before the fatal act is committed provided the accused had time to think and did intend to kill." *Kirby*, 50 Va. App. at 700 (quoting *Remington*, 262 Va. at 352); *accord Akers v. Commonwealth*, 216 Va. 40, 48 (1975).

Ordinarily, whether an accused formed the requisite specific intent to kill is a question for the finder of fact. *Morris v. Commonwealth*, 17 Va. App. 575, 578 (1994); *accord Epperly v. Commonwealth*, 224 Va. 214, 232 (1982). "Premeditation and formation of an intent to kill seldom can be proved by direct evidence. A combination of circumstantial factors may be sufficient." *Rhodes*, 238 Va. at 486.

Here, the evidence reflected that Beale tied Hill up with tape, placed a gag in her mouth, attempted to light Hill's dog on fire, and then shot Hill in the head. Later that same week, Beale went to Baxter's home and, upon entering the residence and encountering Baxter lying on a couch, shot him in the head at close range. That Beale intended to kill Hill and Baxter is supported by the nature of the killings—both victims were shot in the head from close range. *See Stewart v. Commonwealth*, 245 Va. 222, 240-41 (1993) (finding "little difference" between "evidence that a weapon was placed against a victim's head when the fatal shot was fired" and "facing a person and firing a shot into their forehead from a distance of six inches or less," in that both acts evince

---

[8] Aggravated murder, formerly capital murder, *see* 2021 Va. Acts Spec. Sess. I chs. 344, 345, includes the same premeditation element as premeditated first-degree murder. *Compare* Code § 18.2-31(A)(8) (requiring a killing to be "willful, deliberate, and premeditated" in order to constitute aggravated murder), *with* Code § 18.2-32 (defining first-degree murder to include any "willful, deliberate, and premeditated killing").

premeditation). Beale's actions were calculated: he rendered Hill defenseless before shooting her in the head, and he took Baxter by surprise, shooting Baxter in the head moments after encountering him lying on a couch. *See Martinez v. Commonwealth*, 42 Va. App. 9, 23 (2003) (finding sufficient evidence of premeditation where the victim was "sitting on the couch, presenting no threat," when the defendant pulled a gun from his waistband, aimed at his head, and then "shot him at a very short distance"). Moreover, following his capture, Beale made statements that were indicative of his intent, such as the admission that he would have likely killed more people had he not been arrested. *See Smith v. Commonwealth*, 220 Va. 696, 702 (1980) (stating that a jury may "consider all the actions and conduct of the defendant before, at the time of, and after the murder").

While Beale contends that he acted on "an internal combustion of emotions" and that his "compulsion to kill was sudden and impassioned," his motivation for killing Hill and Baxter is not the subject of our inquiry—it is whether he "formulate[d] the intent to kill [them]." *Shell v. Commonwealth*, 11 Va. App. 247, 257 (1990) (concluding that "acting out of anger or rage" does not negate premeditation). In this case, the jury was entitled to infer that, in his emotional turmoil, Beale resolved to kill Hill and Baxter. *See Kirby*, 50 Va. App. at 700. Hence, the evidence was sufficient to prove premeditation.

### III. CONCLUSION

For the foregoing reasons, the trial court did not err by denying Beale's motion to strike the charges of aggravated murder. Thus, we affirm the trial court's judgment.

*Affirmed.*