COURT OF APPEALS OF VIRGINIA

Present:   Judges Chafin, Russell and Senior Judge Clements
Argued at Salem, Virginia

UNPUBLISHED

DOUGLAS DASHAWN WIMBUSH

v.      Record No. 0723-18-3

COMMONWEALTH OF VIRGINIA

MEMORANDUM OPINION[*] BY
JUDGE JEAN HARRISON CLEMENTS
JULY 9, 2019

FROM THE CIRCUIT COURT OF THE CITY OF DANVILLE
James J. Reynolds, Judge

Michael A. Nicholas (Daniel, Medley & Kirby, P.C., on brief), for
appellant.

Victoria Johnson, Assistant Attorney General (Mark R. Herring,
Attorney General, on brief), for appellee.


A jury found appellant guilty of possession of a firearm after having been adjudicated a

violent felon.  He argues on appeal that the evidence was insufficient as a matter of law to prove

that he "possessed a firearm capable of expelling a projectile by means of an explosion."[1]  We

disagree and affirm his conviction.[2]

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

[1] The Commonwealth contends that appellant's argument is waived because his assignment of error refers only to the capability of the firearm to expel a projectile.  In Armstrong v. Commonwealth, 263 Va. 573, 584 (2002), the Supreme Court held that the correct standard under Code § 18.2-308.2 is whether the firearm "was designed, made and intended to expel a projectile by means of an explosion," and that it was "not necessary" to prove the weapon was "'operable,' 'capable' of being fired, or had the 'actual capacity to do serious harm.'"  We assume without deciding that appellant's assignment of error is sufficient for us to address the merits of his argument.

[2] As a consequence of his conviction, appellant's previously suspended sentence was revoked and partially re-suspended.  Appellant asserts that the revocation should be reversed if his conviction is reversed.  Because we affirm appellant's conviction, this claim is moot.

BACKGROUND

Under settled principles, we state the facts in the light most favorable to the Commonwealth because it prevailed in the trial court. Gerald v. Commonwealth, 295 Va. 469, 472-73 (2018). We regard as true all credible evidence favorable to the Commonwealth and all inferences that may reasonably be drawn from that evidence. Id.

The evidence established that Erica Hutchings heard gunshots after 7:00 a.m. on October 29, 2017, and saw a black man wearing a blue and white long sleeved jacket, who was later identified as appellant, running past her house. She called 911, and several police officers responded to the scene at 7:55 a.m. An unoccupied car was in the middle of the street; the front passenger side window had been shot out, and money was strewn from the car into a nearby yard.

A neighbor, Ralph Chandler, also heard gunshots and saw two black males walking through the back of his yard at about 7:40 - 7:45 a.m. The taller of the two men wore a white, blue, and green jacket and held a dark colored revolver with a four or five-inch barrel. Chandler could not see the men's faces clearly enough to identify them specifically.

Bobby Martin and his wife lived on an adjacent street to Chandler and Hutchings.[3] At about 7:30 - 7:45 a.m., a black man walked onto the rear porch of Martin's house and asked to use the phone. Appellant followed the man onto the deck. Martin described appellant as the taller or bigger man. The smaller man wore jeans and a dark colored shirt. Appellant wore a blue and white jacket. The smaller man asked to make another telephone call. He then opened the sliding door, and both he and appellant entered Martin's house. Martin told them they had to leave because he was going to church. The two men walked back onto the deck, and Martin saw

_____

[3] An aerial map of the neighborhood was used at trial to show the close proximity of the houses of Chandler, Hutchings, and Martin.

- 2 -

the smaller man hand appellant a gun, which appellant put in his pocket. Martin testified at trial that the gun was wrapped in a thin white cloth. He recognized the shape of a gun, but could not determine the specific type or model.

Appellant and the other man walked behind a shed in Martin's back yard. Martin saw appellant "peep[ing] out" from behind the shed. Martin's wife had called 911, and as the police officers arrived "shortly before 9:00 a.m.," appellant was walking down Martin's driveway. Appellant was no longer wearing his jacket. The police later found the jacket hidden in a trash can next to the shed. The gun was not recovered. The police saw an unidentified man running away from Martin's shed, but he was not apprehended.

The results of a gunshot residue test conducted on appellant's hands were negative. The forensic scientist who performed the analysis testified that the absence of residue indicates that the person tested did not fire a gun or that he could have worn gloves or wiped or washed his hands after firing the gun.

Shortly after he was arrested on October 29, 2017, appellant made two telephone calls from the jail, the recordings of which were played at trial. The first call was made about noon. Appellant told the woman he called that he had been charged with a gun offense. He said that the police had performed a gun powder residue test and that the test would come back negative. He indicated that another woman had shot out a car window. He then told the woman on the phone that he needed her to contact a man he called "Gutter," and that she was to tell Gutter that he needed to "get the toolie woolie from under the [inaudible]." The woman responded to the request by asking "They didn't get that right . . . . They didn't find that." Appellant confirmed that no one had found the object. He concluded the phone conversation by once again telling the woman that she needed to contact another person who needed "to handle" the situation.

The second call was made about one hour later to the same woman. Appellant asked her to go to Martin's house to get the object he left there. He described the house, gave her directions to get there, and told her to look under the shed and in the bushes. Near the end of the call, appellant asked her to call a third party. Another male voice is then heard on the line. Appellant told this man that he was facing a gun charge and explained that the police had performed a gun powder residue test on him. The unidentified man told appellant that he was "good" because he did not have a gun. Appellant interjected that he was trying to get the woman to pick up something that he had left at Martin's shed. The unidentified man responded that he had "already got the jammy[4] . . . don't worry about that." The man then told appellant "don't talk about no jammies."

ANALYSIS

When reviewing a challenge to the sufficiency of the evidence, the judgment of the trial court is presumed correct; we may set the judgment aside only if it "is plainly wrong or without evidence to support it." Code § 8.01-680; Pijor v. Commonwealth, 294 Va. 502, 512 (2017). Given that presumption, this Court "does not 'ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt.'" Williams v. Commonwealth, 278 Va. 190, 193 (2009) (quoting Jackson v. Virginia, 443 U.S. 307, 318-19 (1979)). "Rather, the relevant question is whether '*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" Id. (quoting Jackson, 443 U.S. at 319).

---

[4] There is no evidence in the record to explain what a "jammy" refers to. When the phone conversation is taken in context with the other evidence produced by the Commonwealth at trial it reasonably can be inferred that appellant and the other man were talking about the gun that Martin and Chandler had seen appellant holding earlier in the day. See Kelly v. Commonwealth, 41 Va. App. 250, 257-58 (2003) (noting the responsibility of the trier of fact to draw reasonable inferences from basic facts to ultimate facts).

Additionally, "[c]ircumstantial evidence [presented during the course of the trial] is as competent and is entitled to as much weight as direct evidence, provided it is sufficiently convincing to exclude every reasonable hypothesis except that of guilt." Holloway v. Commonwealth, 57 Va. App. 658, 665 (2011) (*en banc*) (quoting Coleman v. Commonwealth, 226 Va. 31, 53 (1983)). Circumstantial evidence is not "viewed in isolation." Brown v. Commonwealth, 54 Va. App. 107, 119 (2009) (quoting Muhammad v. Commonwealth, 269 Va. 451, 479 (2005)). Rather, the "combined force of many concurrent and related circumstances, each insufficient in itself, may lead a reasonable mind irresistibly to a conclusion." Id.

To convict appellant, the Commonwealth had to prove that he had previously been convicted of a felony and possessed an object "designed, made, and intended to fire or expel a projectile by means of an explosion." Jordan v. Commonwealth, 286 Va. 153, 157 (2013) (quoting Armstrong, 263 Va. at 583). Appellant does not contest his status as a convicted felon, but he argues that the evidence did not prove that he possessed a firearm in violation of Code § 18.2-308.2 because no firearm was recovered and Martin's testimony that appellant had a gun was not credible. Martin said that he did not "know that much about guns," but he was positive that the object wrapped in a thin cloth, which the smaller man gave to appellant, was a gun. Appellant asserts that because Martin could not identify with specificity the type of gun that he saw, the evidence established only that appellant possessed an object that appeared to be a firearm.

A court may consider a witness's identification of an object as a firearm. "The determination of how much weight to give to [Martin's] identification of the object as a [firearm] was a matter for the trier of fact." Jordan, 286 Va. at 158. The Commonwealth was not required "to present *specific testimony* that the object was designed, made, and intended to fire or expel a projectile by means of an explosion." Speller v. Commonwealth, 69 Va. App. 378, 395 (2018).

Rather, whether the object fit the requisite definition "is a question of fact that may be proven by circumstantial evidence." Id.

Other evidence supported Martin's testimony and proved that appellant possessed a firearm that was "designed, made, and intended to expel a projectile by means of an explosion." Armstrong, 263 Va. at 584. Two witnesses, Hutchings and Chandler, testified that they heard gunshots on the morning of October 29, 2017. The police found an unoccupied car in the street near Hutchings's house, and the front passenger window had been shot out. Hutchings identified appellant as the man she saw passing her house immediately after she heard gunshots. Chandler said that he saw two black men walk through his yard and that the taller man had a revolver in his hand. Given the location of their houses, which was shown on an aerial map, the reasonable inference is that the man Chandler saw was appellant.

Further, in appellant's first telephone call from jail, he discussed an incident in which another woman had shot out a window of a car. Appellant told the woman he had called that she needed to tell a man he identified as "Gutter" to retrieve an object that had been left behind. In appellant's second telephone call from the jail to the same woman, he asked her to go to Martin's residence to look under the shed and in the bushes for an object he had hidden there. He described the property and gave directions to get there. During the call, an unidentified man told appellant not to worry and that he "already got the jammy." Because the police searched the property without finding the firearm, the reasonable inference is that appellant's friend had already retrieved it. See Kelly, 41 Va. App. at 257-58.

The jury accepted the testimony of the Commonwealth's witnesses as credible. Determining the "credibility of the witnesses is a matter solely for the finder of fact, who has the opportunity to observe the witnesses testify." Severance v. Commonwealth, 67 Va. App. 629, 649 (2017), aff'd, 295 Va. 277 (2018); see Commonwealth v. McNeal, 282 Va. 16, 22 (2011)

(fact finder is entitled to resolve any conflicts in the evidence).  "When 'credibility issues have been resolved by the [fact finder] in favor of the Commonwealth, those findings will not be disturbed on appeal unless plainly wrong.'"  Towler v. Commonwealth, 59 Va. App. 284, 291 (2011) (quoting Corvin v. Commonwealth, 13 Va. App. 296, 299 (1991)).

CONCLUSION

We hold that the evidence was sufficient to prove that appellant was guilty as charged, and we affirm his conviction.

Affirmed.