COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present: Judges Humphreys, Chaney and Lorish
Argued at Virginia Beach, Virginia


MICHAEL EUGENE LACEY

                                        MEMORANDUM OPINION[*] BY
v.       Record No. 0730-21-1          JUDGE ROBERT J. HUMPHREYS
                                         MAY 24, 2022
COMMONWEALTH OF VRIGINIA


FROM THE CIRCUIT COURT OF THE CITY OF NORFOLK
Everett A. Martin, Jr., Judge

Eric P. Korslund (Law Office of Eric Korslund, P.L.L.C., on brief),
for appellant.

Matthew P. Dullaghan, Senior Assistant Attorney General (Jason S.
Miyares, Attorney General, on brief), for appellee.


Michael Eugene Lacey appeals his convictions for burglary, in violation of Code

§ 18.2-91, and grand larceny, in violation of Code § 18.2-95. On appeal, Lacey challenges the

sufficiency of the identification evidence proving that he was the individual who committed the

offenses.

BACKGROUND

"On appeal, we review the evidence in the 'light most favorable' to the Commonwealth,

the prevailing party in the trial court." *Yerling v. Commonwealth*, 71 Va. App. 527, 530 (2020)

(quoting *Vasquez v. Commonwealth*, 291 Va. 232, 236 (2016)). This standard requires us to

"discard the evidence of the accused in conflict with that of the Commonwealth, and regard as

true all the credible evidence favorable to the Commonwealth and all fair inferences to be drawn

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

[from that evidence]." *Bagley v. Commonwealth*, 73 Va. App. 1, 26 (2021) (alteration in original) (quoting *Cooper v. Commonwealth*, 54 Va. App. 558, 562 (2009)).

Brandi Stroud shared a home in Norfolk with her boyfriend, her mother, her mother's partner, and four young children. One afternoon, Stroud was in the living room feeding one of her children while her mother's partner, Tina Boyles,[1] mowed the front lawn. Eventually, Stroud stood up and walked toward the kitchen to put away some dishes. As Stroud approached the kitchen, she saw her four-year-old child "backing out of the kitchen saying, 'stranger danger.'" Stroud went into the kitchen and saw an unknown man. At the bench trial, Stroud identified the man she found in her kitchen as Lacey. Neither Stroud nor Boyles had ever seen Lacey before, and he had not received permission to enter their home. Both Stroud and Boyles testified that the back door was closed. Stroud testified that Lacey wore black shorts and black shoes. She asked him if she could help him with anything, and he responded that Boyles had told him he could come in and grab something. Lacey then walked past Stroud into the dining room and grabbed a wallet out of Boyles' purse, which was sitting on the dining room table.

Upon realizing that Lacey had taken Boyles' wallet and intended to leave with it, Stroud "shoved him into the wall." She and Lacey "were face to face at one point when [they] were wrestling around," and their faces were "[m]aybe an inch, two inches away" from each other. Stroud testified that she and Lacey were "right on top of each other" during the struggle for Boyles' wallet. Lacey grabbed Stroud's left wrist and twisted it, allowing him to break free from her and escape through the back door. Lacey absconded with Boyles' wallet, which contained $500 in cash that was never recovered.

---

[1] Boyles' name appears as "Voyles" throughout the trial transcript but as "Boyles" elsewhere in the record. This opinion uses "Boyles" because it is consistent with Boyles' own signature on Commonwealth's Exhibit 7.

Boyles heard "some commotion" and her granddaughter screaming over the sound of the lawn mower, and turned to see Lacey leave through the back gate and walk down the driveway toward a parked car. Boyles testified that Lacey had on khaki shorts, a regular shirt, and a ball cap. She thought he was bald but could not be sure because he was wearing a hat. Like Stroud, Boyles identified Lacey at trial as the perpetrator of the robbery.

Lacey got into the parked car and proceeded to drive away. Stroud's boyfriend and Boyles chased after Lacey as he drove off; Stroud testified that the car had a spoiler on the back and that the rims were either painted black or they were without hub caps. Boyles testified that she was within a foot of the car and was nearly able to grab the car's spoiler before Lacey drove away. Boyles testified that she made eye contact with Lacey in the course of chasing him.

Eight days later, police received a call to investigate another burglary in Norfolk. Police ultimately arrested Lacey for that burglary and seized his car, which was parked nearby. The car seized by police had a black spoiler and black hub caps. At trial, the Commonwealth showed Stroud and Boyles photographs of the seized vehicle, and they both confirmed it was the same car that they observed Lacey driving away in following the burglary and theft at their home.

The day after the second burglary, Stroud saw Lacey's face on the television news during a report on his arrest. She testified that she had no question that the person pictured on the news was the same person who broke into her home; she "knew it was him." That same day, Stroud emailed a detective a screenshot with Lacey's face from the news station's Facebook page and wrote: "This is the same man that came into our home!" A detective came to Stroud's house and showed her a picture of Lacey in a jail jumpsuit and asked if he was the culprit. Stroud answered in the affirmative. The detective did not show Stroud photographs of any other person.

Boyles also recognized Lacey's face from the news station's Facebook page. She testified that she "knew as soon as [she] saw him" that it was the same person. A detective also

showed her a picture of Lacey, whom she identified as the perpetrator.  The detective did not show Boyles pictures of any other individuals.

Lacey moved to strike the evidence at the conclusion of the Commonwealth's case and argued in closing that the evidence was insufficient to prove beyond a reasonable doubt that Lacey was the person who committed the offenses in Stroud and Boyles' home.  Lacey asked the circuit court to not give much weight to the in-court identifications made by Stroud and Boyles.  The circuit court denied the motion and found Lacey guilty of burglary and grand larceny.  This appeal followed.

## ANALYSIS

Lacey asserts that insufficient evidence supports his convictions.  "When reviewing the sufficiency of the evidence, '[t]he judgment of the trial court is presumed correct and will not be disturbed unless it is plainly wrong or without evidence to support it.'"  *McGowan v. Commonwealth*, 72 Va. App. 513, 521 (2020) (alteration in original) (quoting *Smith v. Commonwealth*, 296 Va. 450, 460 (2018)).  "In such cases, '[t]he Court does not ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt.'"  *Id.* (alteration in original) (quoting *Secret v. Commonwealth*, 296 Va. 204, 228 (2018)).  "Rather, the relevant question is whether '*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'"  *Vasquez*, 291 Va. at 248 (quoting *Williams v. Commonwealth*, 278 Va. 190, 193 (2009)).  "If there is evidentiary support for the conviction, 'the reviewing court is not permitted to substitute its own judgment, even if its opinion might differ from the conclusions reached by the finder of fact at the trial.'"  *McGowan*, 72 Va. App. at 521 (quoting *Chavez v. Commonwealth*, 69 Va. App. 149, 161 (2018)).

"To sustain a conviction for statutory burglary under Code § 18.2-91, the Commonwealth must prove:  (1) the accused . . . broke and entered the dwelling house in the daytime; and (2) the

accused entered with the intent to commit any felony other than murder, rape, robbery or arson."

*Speller v. Commonwealth*, 69 Va. App. 378, 387 (2018) (quoting *Robertson v. Commonwealth*,

31 Va. App. 814, 820-21 (2000)). Larceny is "the wrongful or fraudulent taking of personal

goods of some intrinsic value, belonging to another, without his assent, and with the intention to

deprive the owner thereof permanently." *Bruhn v. Commonwealth*, 35 Va. App. 339, 343-44

(2001) (quoting *Jones v. Commonwealth*, 3 Va. App. 295, 300 (1986)). At the time of the

offense, larceny of goods with a value of $500 or more was classified as grand larceny.[2] Code

§ 18.2-95 (2019).

On appeal, Lacey challenges the sufficiency of the evidence establishing his identity as

the offender.[3] "At trial, the Commonwealth bears the burden of proving the identity of the

accused as the perpetrator beyond a reasonable doubt." *Cuffee v. Commonwealth*, 61 Va. App.

353, 364 (2013) (quoting *Blevins v. Commonwealth*, 40 Va. App. 412, 423 (2003)).

Lacey did not move to suppress the in-court identifications. Because Lacey's assignment

of error alleges legal insufficiency of the evidence, Code § 19.2-324.1 is relevant and requires

the reviewing court, in conducting a sufficiency analysis, to consider *all* evidence admitted at

trial, regardless of whether its admission was proper, to determine whether sufficient evidence

sustains the conviction. Given that statutory mandate, we review the trier-of-fact's

determination—here, the circuit court's determination—regarding the legal sufficiency of

Lacey's in-court identification in the context of whether, given "the totality of the

circumstances," a reasonable fact finder could conclude that Lacey was the person who

---

[2] The legislature amended the statute in 2020; under the amended statute, property must have a value of $1,000 or more to be classified as grand larceny. 2020 Va. Acts ch. 89.

[3] Lacey's opening brief states that he is challenging the reliability of "Smiley's" identification. The record does not reflect any witnesses by that name.

committed these crimes. *See Brown v. Commonwealth*, 37 Va. App. 507, 523 (2002) (quoting

*Satcher v. Commonwealth*, 244 Va. 220, 249 (1992)). The factors set forth in *Neil v. Biggers*,

409 U.S. 188 (1972), are used to determine "whether the identification evidence is sufficient,

standing alone or in combination with other evidence, to prove beyond a reasonable doubt" the

identity of the perpetrator. *Brown*, 37 Va. App. at 522.

> [T]he factors to be considered in evaluating the likelihood of
> misidentification include the opportunity of the witness to view the
> criminal at the time of the crime, the witness' degree of attention,
> the accuracy of the witness' prior description of the criminal, the
> level of certainty demonstrated by the witness at the confrontation,
> and the length of time between the crime and the confrontation.

*Biggers*, 409 U.S. at 199-200. "Determining the credibility of witnesses . . . is within the

exclusive province of the [fact finder], which has the unique opportunity to observe the

demeanor of the witnesses as they testify." *Dalton v. Commonwealth*, 64 Va. App. 512, 525

(2015) (first alteration in original) (quoting *Lea v. Commonwealth*, 16 Va. App. 300, 304

(1993)).

Lacey offers no specific arguments as to why the evidence was insufficient to establish

his identity. In any event, assessing the *Biggers* factors, a reasonable fact finder could credit

Stroud and Boyles' eyewitness identifications. Both witnesses were close to Lacey at the time of

the crime, which occurred during the day. Stroud in particular testified that she was a mere inch

or two from Lacey's face as they wrestled. Both witnesses paid close attention to Lacey as they

attempted to stop him from committing the crime. Although the witnesses' description of

Lacey's clothing differed slightly, their description of his vehicle matched the vehicle later

recovered and registered in his name. At any rate, inconsistencies in the witnesses'

identifications of Lacey do not render their identifications unreliable; rather, these

inconsistencies go toward the circuit court's weighing of the credibility of the witnesses, a matter

within its sound discretion. *See Cuffee*, 61 Va. App. at 366. Both witnesses maintained that they were completely sure in their identifications, and less than a month passed between the events and the witnesses identifying Lacey to the police. Under the totality of the circumstances, and in the absence of any specific argument to the contrary, we cannot say that the fact finder was plainly wrong in finding the evidence of Lacey's identity as the perpetrator sufficient to convict him of burglary and grand larceny.[4]

## CONCLUSION

The circuit court's decision to deny the motion to strike the evidence was not plainly wrong. Accordingly, the circuit court's judgment is affirmed.

*Affirmed.*

---

[4] Lacey filed several *pro se* motions in this Court unrelated to the assignment of error. Lacey was represented by counsel both at trial and in the course of this appeal. Because we have previously held that we need not permit hybrid representation and Lacey identifies no rule of court that enables him, a party represented by counsel, to file *pro se* pleadings separately from those found worthy by his counsel, we deny his *pro se* motions. *See Hammer v. Commonwealth*, 74 Va. App. 225, 241-42 (2022).