COURT OF APPEALS OF VIRGINIA

Present:   Judges O'Brien, AtLee and Malveaux
Argued at Norfolk, Virginia

UNPUBLISHED

PHILLIP EVAN JONES

v.      Record No. 1386-22-1

COMMONWEALTH OF VIRGINIA

MEMORANDUM OPINION* BY
JUDGE MARY GRACE O'BRIEN
DECEMBER 19, 2023

FROM THE CIRCUIT COURT OF THE CITY OF NEWPORT NEWS
Christopher R. Papile, Judge

Charles E. Haden for appellant.

Timothy J. Huffstutter, Assistant Attorney General (Jason S.
Miyares, Attorney General, on brief), for appellee.


A jury convicted Phillip Evan Jones (appellant) of first-degree murder and use of a firearm

in the commission of murder.  On appeal, appellant argues that the evidence was insufficient to

sustain his convictions because the Commonwealth failed to prove his identity as the perpetrator

and that the murder was premeditated.  Appellant further contends that the court erred by refusing

to strike a prospective juror for cause.  Finding no error, we affirm appellant's convictions.

BACKGROUND

On appeal, we state the facts in the light most favorable to the Commonwealth.  *Poole v.

Commonwealth*, 73 Va. App. 357, 360 (2021).  "In doing so, we discard any of appellant's

conflicting evidence and regard as true all credible evidence favorable to the Commonwealth and

all inferences that may reasonably be drawn from that evidence."  *McGowan v. Commonwealth*,

72 Va. App. 513, 516 (2020).

---

* This opinion is not designated for publication.  *See* Code § 17.1-413(A).

I.  Evidence at Trial

On September 14, 2020, Darius Brown was shot in the back three times in the parking lot of Tidewater Physicians Multispecialty Group in Newport News, Virginia.  The shooting was recorded by home surveillance cameras in the surrounding area.  The surveillance videos showed that a silver SUV, driven by Jordan Matthias, drove past Brown as he walked down the sidewalk towards the parking lot.  Appellant was a passenger in Matthias's SUV.  Matthias and appellant pulled into the parking lot and idled as Brown walked towards the parking lot.  Appellant exited the SUV and approached Brown at the sidewalk.  Appellant talked with Brown while he followed Brown through the parking lot.  Matthias drove away as appellant and Brown walked through the parking lot.  Brown suddenly collapsed as appellant walked closely behind him.  Matthias's SUV pulled up to the parking lot just after Brown collapsed, and appellant ran to the vehicle and fled.  No one else was near Brown when he was shot.

Detective Jacqueline Howser interviewed appellant two weeks later.  Appellant stated he worked as a videographer and had filmed a music video for Brown a few months earlier.  Appellant admitted he was in the parking lot during the shooting but claimed that he never saw or interacted with Brown and ran away when he heard gunshots.  Appellant also told Detective Howser that he previously owned a handgun that was "probably a nine[-millimeter]" but sold it several months earlier.

Matthias confirmed that he drove appellant to the parking lot.  After appellant "flashed" him down, Matthias drove appellant home.  He claimed he never saw appellant with a weapon and that he witnessed nothing because he was preoccupied searching for his wallet.

A crime scene technician recovered three nine-millimeter cartridge casings close to Brown's body.  A forensic scientist testified at trial that the casings and bullets were all

discharged from the same firearm and that the bullets that killed Brown could have been fired from a nine-millimeter handgun.

## II. Voir Dire

During voir dire, defense counsel asked if any prospective jurors or their family members had ever been charged with a crime. Juror E.B.[1] disclosed that she had been a victim of a shooting and was a witness in the case. Defense counsel noted that appellant was accused of a shooting and asked Juror E.B., "so just given that you've been through that and then you'll have to hear about a gunshot-related incident in this case, do you feel like you could be fair and impartial to both sides in this particular case?" Juror E.B. responded, "Yes."

Defense counsel then inquired whether her prior experience "would make it hard for [her] to be fair and impartial." Juror E.B. answered, "I don't think so. I can't be 100 percent sure, but I could -- I would do my best to be impartial." Finally, defense counsel asked if she had "a doubt that [she] could be fair and impartial" and Juror E.B. answered, "Not 100 percent sure."

Neither counsel nor the court questioned Juror E.B. further. Appellant moved to strike Juror E.B. for cause, arguing that her responses disqualified her from the jury because she was not 100% percent sure she could be fair and impartial. The court denied the motion and reasoned,

> I'm not sure if it's 99.9 percent sure or what. Again, she started out indicating she could be fair and impartial. Then when [defense counsel] followed up in terms of, [a]re you certain? Then I think she very honestly said not 100 percent. But I'm comfortable that her responses at the outset were sufficient to indicate her ability to be fair and impartial . . . .

---

[1] We use the juror's initials to protect her privacy.

## ANALYSIS

### I. Sufficiency of the Evidence

"When reviewing the sufficiency of the evidence, '[t]he judgment of the trial court is presumed correct and will not be disturbed unless it is plainly wrong or without evidence to support it.'" *McGowan*, 72 Va. App. at 521 (alteration in original) (quoting *Smith v. Commonwealth*, 296 Va. 450, 460 (2018)). "The relevant issue on appeal is, 'upon review of the evidence in the light most favorable to the prosecution, whether *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Lambert v. Commonwealth*, 298 Va. 510, 515 (2020) (quoting *Pijor v. Commonwealth*, 294 Va. 502, 512 (2017)). "This deferential standard of review 'applies not only to the historical facts themselves, but the inferences from those facts as well.'" *Johnson v. Commonwealth*, 53 Va. App. 79, 100 (2008) (quoting *Crowder v. Commonwealth*, 41 Va. App. 658, 663 n.2 (2003)). "The inferences to be drawn from proven facts, so long as they are reasonable, are within the province of the trier of fact." *Id.* (quoting *Hancock v. Commonwealth*, 12 Va. App. 774, 782 (1991)).

### A. Identity

Appellant argues that the Commonwealth failed to prove that he was the shooter. He contends that the Commonwealth proved only his presence at the scene, which was merely a "suspicious circumstance[]" insufficient for a conviction.

In reviewing the sufficiency of the evidence, we do not examine "each incriminating fact in isolation." *Commonwealth v. Barney*, ___ Va. ___, ___ (Mar. 16, 2023). "Instead, in an appellate sufficiency review, the evidence is 'considered as a whole.'" *Id*. at ___ (quoting *Stamper v. Commonwealth*, 220 Va. 260, 273 (1979)). "This approach recognizes that 'while no single piece of evidence may be sufficient, the combined force of many concurrent and related

circumstances . . . may lead a reasonable mind irresistibly to a conclusion.'" *Id.* at ___ (quoting *Commonwealth v. Moseley*, 293 Va. 455, 463 (2017)).

A rational fact finder could conclude from the evidence at trial that appellant shot Brown. The surveillance footage established that Matthias and appellant drove past Brown and then waited for him in the parking lot. Appellant approached Brown near the sidewalk and followed him through the parking lot. While appellant walked closely behind Brown, Brown suddenly collapsed. Appellant immediately ran to Matthias's SUV and fled. No one else was visible in the parking lot or near Brown when he was shot in the back. Appellant's statements established that he had owned a nine-millimeter handgun, which was consistent with the shell casings found near Brown's body. "[A] jury may 'draw reasonable inferences from basic to ultimate facts.'" *Johnson*, 53 Va. App. at 100 (quoting *Haskins v. Commonwealth*, 44 Va. App. 1, 10 (2004)).

Additionally, although appellant claimed that he had sold his gun several months earlier and that he never saw or interacted with Brown, the jury was "entitled to disbelieve" appellant's self-serving statements "and to conclude that [appellant was] lying to conceal his guilt," especially when the surveillance footage was inconsistent with appellant's claims. *Flanagan v. Commonwealth*, 58 Va. App. 681, 702 (2011) (quoting *Marable v. Commonwealth*, 27 Va. App. 505, 509-10 (1998)). The jury was also permitted to consider appellant's flight as evidence of his guilt. *See Speller v. Commonwealth*, 69 Va. App. 378, 388 (2018) ("Flight following the commission of a crime is evidence of guilt . . . ." (quoting *Clagett v. Commonwealth*, 252 Va. 79, 93 (1996))).

Viewed in its entirety, the evidence was sufficient to enable a rational fact finder to conclude that appellant was the shooter and was therefore guilty of first-degree murder and use of a firearm in the commission of murder.

B. Premeditation

Appellant next argues the evidence of premeditation was insufficient to support his conviction for first-degree murder because the Commonwealth did not offer any direct evidence of his intent.

"To premeditate means to adopt a specific intent to kill, and that is what distinguishes first and second degree murder." *Kirby v. Commonwealth*, 50 Va. App. 691, 700 (2007) (quoting *Remington v. Commonwealth*, 262 Va. 333, 352 (2001)). "Proof of premeditation . . . will be sufficient[] even if the premeditation shown is only slight or momentary." *Beavers v. Commonwealth*, 245 Va. 268, 282 (1993). "[T]he design to kill may be formed only a moment before the fatal act is committed provided the accused had time to think and did intend to kill." *Kirby*, 50 Va. App. at 700 (quoting *Remington*, 262 Va. at 352). "Because 'premeditation and formation of an intent to kill seldom can be proved by direct evidence[,][a] combination of circumstantial factors may be sufficient.'" *Fields v. Commonwealth*, 73 Va. App. 652, 674 (2021) (alterations in original) (quoting *Aldridge v. Commonwealth*, 44 Va. App. 618, 655 (2004)); *see also Commonwealth v. Perkins*, 295 Va. 323, 330 (2018) ("Intent is the purpose formed in a person's mind which may, *and often must*, be inferred from the facts and circumstances in a particular case." (quoting *Burton v. Commonwealth*, 281 Va. 622, 626-27 (2011))).

The evidence supports the jury's conclusion that appellant premeditated Brown's murder. Appellant waited in the parking lot for Brown to approach, met him at the sidewalk, and followed closely behind him, evincing a plan. Appellant shot Brown—more than once—in the back as Brown walked away, and then fled the scene. These circumstances are sufficient for a rational fact finder to infer that appellant "had time to think and [intended] to kill," *Kirby*, 50 Va. App. at 700, and thus, premeditated Brown's murder. *See Chandler v. Commonwealth*, 249

Va. 270, 280 (1995) (holding that a jury's finding of premeditation was not plainly wrong where the evidence showed that the defendant fired his gun more than once); *see also Jackson v. Virginia*, 443 U.S. 307, 325 (1979) (noting that firing a weapon at a "close, and thus predictably fatal, range" is indicative of an intent to kill).

## II. Juror E.B.

Finally, appellant challenges the court's refusal to strike Juror E.B. from the venire for cause. He argues that Juror E.B. should have been removed because she could not be "100 percent sure" of her impartiality.

"Juror impartiality is a question of fact, and a trial court's decision to seat a juror is entitled to great deference on appeal." *Brown v. Commonwealth*, 68 Va. App. 746, 784 (2018) (quoting *Lovos-Rivas v. Commonwealth*, 58 Va. App. 55, 61 (2011)). "On appellate review, this Court must give deference to the circuit court's determination whether to exclude a prospective juror because that court was able to see and hear each member of the venire respond to questions posed," and is therefore in a "superior position to determine whether a prospective juror's responses during voir *dire* indicate that the juror would be prevented from or impaired in performing the[ir] duties." *Green v. Commonwealth*, 262 Va. 105, 115 (2001). "[T]he trial court must weigh the meaning of the answers given in light of the phrasing of the questions posed, the inflections, tone, and tenor of the dialogue, and the general demeanor of the prospective juror." *Taylor v. Commonwealth*, 67 Va. App. 448, 455 (2017) (alteration in original) (quoting *Smith v. Commonwealth*, 219 Va. 455, 464-65 (1978)). "[B]ecause the trial judge has the opportunity, which we lack, to observe and evaluate the apparent sincerity, conscientiousness, intelligence, and demeanor of prospective jurors first hand, the trial court's exercise of judicial discretion in deciding challenges for cause will not be disturbed on appeal, unless" the record reveals "manifest error." *Id*. at 455-56 (alteration in original) (quoting *Jackson v. Commonwealth*, 267

- 7 -

Va. 178, 191 (2004)). In assessing a prospective juror's impartiality, we review the voir dire of the juror "as a whole, not just isolated statements by that juror." *Goodwin v. Commonwealth*, 71 Va. App. 125, 136 (2019).

The court had the opportunity to observe Juror E.B. and determine her "sincerity . . . and demeanor . . . first hand." *Taylor*, 67 Va. App. at 455 (quoting *Jackson*, 267 Va. at 191). After considering the entirety of her voir dire and the context of her statements, the court noted Juror E.B. initially unequivocally stated she could be fair and impartial and found that it was "comfortable that her responses at the outset were sufficient to indicate her ability to be fair and impartial." The record supports the court's conclusion.

While Juror E.B. expressed some uncertainty about how her experience as a victim might affect her ability to be impartial, the court found that her responses were indicative of her honesty and not of a bias or inability to be impartial. "Our duty to defer to the trial judge" is demonstrated by the first part of Juror E.B's answer, "I don't think so," to defense counsel's question about whether her experiences "would make it hard for [her] to be fair and impartial." *Weeks v. Commonwealth*, 248 Va. 460, 475 (1994). In *Weeks*, the Supreme Court found that a trial court properly refused a motion to strike a juror for cause. *Id.* In response to a question about whether he could be impartial, the juror answered, "I think so." *Id.* The Court held,

> Our duty to defer to the trial judge on this subject is illustrated by [the juror's] final answer, "I think so," which the trial judge, not this Court, heard. The juror's emphasis on "so" in that answer conveys an entirely different meaning than if the emphasis had been on "think." On appeal, we must presume he emphasized "so."

*Id.* Like in *Weeks*, we must presume that Juror E.B. emphasized "I don't think so." *Id.*; *see also Keepers v. Commonwealth*, 72 Va. App. 17, 45 (2020) ("[W]e defer to the trial court to resolve any potentially equivocal statements because of its opportunity to observe the juror's tone and demeanor.").

- 8 -

Considering Juror E.B.'s voir dire as a whole, and giving due deference to the court's observations of the juror's "sincerity . . . and demeanor," we find no manifest error in the court's refusal to strike Juror E.B. for cause. *Taylor*, 67 Va. App. at 455 (quoting *Jackson*, 267 Va. at 191).

CONCLUSION

For these reasons, we affirm appellant's convictions for first-degree murder and use of a firearm in the commission of murder.

*Affirmed.*